Danforth, J. [After stating the facts above.]
The guardian paid to the widow of Mr. Rickard, the stepmother of the minor, three thousand three hundred dollars, for the release of her dower, &c.
This was done without an application to the court, although it appears that the guardian had had some consultation with the county judge, upon the subject. The practice is reprehensible of acting upon, a casual remark of the county judge, in so important a matter.
It should have been done by petition to the court, setting up all the facts, and after a full examination of *8 the facts and circumstances, obtaining an order authorizing the purchase of the real estate or the removing of a cloud upon the title of the lands of the ward.
Were this the only error of, or subject of complaint against, the guardian, it might be overlooked in this case, as it does not appear that the transaction was disadvantageous to the minor, nor that it was tainted with bad faith, except that it was a link in the chain, most of which the guardian forged, by which he holds this child and her property.
We have in this case, also, the fact that the sole executor of the estate of William Rickard becomes the guardian of his only child, a minor, and thus as executor, is only to account to himself, the guardian.
To say the least, this relation is of doubtful propriety, and considering the age of the ward, might lead to a gross wrong.
Mr. Becker, knowing that he was the executor, and before it was known, even to the stepmother, that there was a will, induced Mr. Best, an uncle by marriage, by promise that if he, Becker, should be appointed guardian, Mrs. Wainwright, a maternal aunt, should have the care of the child, and that with him as guardian, the maternal aunts and uncles would be all right, to go hastily to the county judge, and plead for his appointment.
This result was, that, when a day or two afterwards, the stepmother, believing there was no will, went to the county judge, to obtain the appointment of an administrator, she signed a petition for the appointment of Mr. Becker, as general guardian.
She says that when she heard that Mr. Becker was appointed guardian, she did not know that she had been instrumental in his appointment, nor had signed a petition for his appointment as guardian.
When Mr. Best returned from his mission to the office of the county judge, he says Becker met him at *9 the depot, at Middleburgh, at night, and expressed much pleasure at what Best had done, and said to him, el Don’t tell any one, not even your wife, for it may leak out, and the other relations get hold of it, and oppose my getting the appointment.”
This, taken in connection with the fact that no notice of any kind, of the proposed appointment, was given to any of the relatives, and that that all the relatives swear that if they had had notice of the application, they would have opposed the appointment of Mr. Becker, who is a stranger to the child, amounts to a fraud upon the child, the relatives, and the court, and demands his- removal.
It was conceded upon the argument that all the relatives of the minor are of the highest respectability.
This court cannot sanction the appointment of a general guardian, without first giving the relatives of the minor residing in the same county, and especially persons of the high character and standing of the relatives of this child, notice of the application, to the end that they may be heard in regard to the subject.
In this case the child is an orphan. None of her blood, or that of her father or mother, flows in the veins of this guardian.
The stépmother was not a relative. Her pecuniary interests were in antagonism to those of this minor.
The petitioners in this matter, being the nearest relatives of the child, now ask that the wrong perpetrated be made right, by the removal of the guardian, and that a proper appointment be made by this court.
The maternal and paternal relatives desired a guardian taken from their side respectively, but after consultation with the relatives on both sides, I have concluded that the best appointment in this case, is that which I have decided to make, and with it, I understand the relatives to be satisfied.
*10 An order must be entered, vacating the letters of guardianship, and removing the said Becker as general guardian of said Catherine M. Rickard, and directing that said Becker appear before Wm. H. Young, Esq., who is appointed a referee to take and state the accounts of said Becker, as such guardian, at such time and place as shall be fixed by said referee, and report same to this court, and also to ascertain and report to this court the amount which should be allowed the respective parties for their costs and expenses of these proceedings, and who, in his opinion, should pay the same. And appointing Albert Rickard, a paternal uncle, farmer, guardian of the real and personal estate of said minor, upon his executing a bond to said minor, in the penal sum of seven thousand dollars, with sureties to be approved as to its form, and as to the sufficiency of the sureties, by a justice of this court, and which, when so approved, shall be filed with the clerk Of Schoharie county, and that, upon the confirmation of the report of said referee, the said Becker deliver within ten days thereafter on demand, to said Albert Rickard, all the property, real and personal, belonging to said ward, in his possession, or under his control, or which shall be found due to said ward, or belong to said ward. And appointing Joseph Mattice, farmer, a maternal uncle of said infant, guardian of the person of said infant, and that the said Becker deliver to said Matttice, the custody of said minor, with her personal effects, on demand, after the said Mattice execute a bond to said infant, with sufficient sureties, to be approved in the same manner as the other bond above named, is directed to be approved, and that the last mentioned bond be in the penal sum of seven thousand dollars, for the faithful performance of the duties of the said office, the said bond to be filed with the clerk of Schoharie county.